

**IT IS ORDERED as set forth below:**

**Date: January 17, 2020**

_____

**Barbara Ellis-Monro
U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| IN RE: | |
| PATRICK MCMANES GERARD, | CASE NO. 18-67328-BEM |
| Debtor. | |
| | CHAPTER 7 |
| PATRICK M. GERARD, | |
| Plaintiff, | |
| | ADVERSARY PROCEEDING NO. |
| v. | 18-5351-BEM |
| UNITED STATES DEPARTMENT OF EDUCATION, | |
| Defendant. | |

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

This matter is before the Court on Plaintiff's *Motion for Premilinary* [sic] *Injunction or Motion to Substitute* (the "Motion"). [Doc. 20]. On December 21, 2018, Plaintiff-Debtor Patrick M. Gerard filed a complaint to determine the dischargeability of his student loans

[Doc. 1], and Defendant the United States Department of Education filed an answer [Doc. 4]. The parties commenced discovery, with an initial deadline of May 20, 2019 [Doc. 6], and a subsequent extended deadline of August 26, 2019 [Doc. 17]. Plaintiff seeks a preliminary injunction to compel Defendant to act or to refrain from acting as follows:

> (1) refrain from recognition of, enforcement of, or participation in the Income-Based Repayment Plan ("IBRP") with Plaintiff;
>
> (2) refrain from accrual of interest on Plaintiff's student loan debt;
>
> (3) refrain from requirement of repayment or collection of Plaintiff's student loan debt;
>
> (4) refrain from issuing objections or refusals in the course of discovery on the basis of the IBRP;
>
> (5) refrain from otherwise limiting the scope of this inquiry on the basis of the IBRP;
>
> (6) refrain from making arguments or motions on the basis of the IBRP;
>
> (7) refrain from destruction or concealment of any records within the scope of those sought by Plaintiff;
>
> (8) comply in a timely fashion with Plaintiff's discovery requests;
>
> (9) give answers to all points requested in Plaintiff's discovery request without excessive objection;
>
> (10) assess and calculate Plaintiff's monthly student loan payment for purposes of this proceeding as though Plaintiff were enrolled in the Standard, Graduated, or Extended Repayment Plans, and not the IBRP;
>
> (11) demonstrate Defendant's stake or injury arising from the discharge sought in this proceeding as it relates to Article III standing for purposes of establishing Defendant is a valid party in interest by way of projecting on some reasonable basis that Plaintiff's future income is sufficient to repay a time adjusted portion of the loan debt such that any loss incurred by Defendant is less than the loss it would incur upon immediate discharge;

> (12) demonstrate Defendant's stake as it relates to Article III standing for purposes of establishing that it is a valid party in interest by way of establishing that Debtor's IBRP can reasonably be presupposed not to be valid or in place for a significant portion of the repayment period; or
>
> (13) consent to substitution of Defendant.

[Doc. 20 at 5-7]. Plaintiff also alleges that the Master Promissory Note and/or his IBRP are illusory contracts and requests guidance from the Court on these matters.[1] [Id. at 7]. Defendant filed a response to the Motion, and Plaintiff filed a reply [Docs. 32, 33], and the matter is now ripe for determination.

## I. Preliminary Injunction Standard

"[A] preliminary injunction is 'an extraordinary remedy never awarded as a matter of right.'" *Benisek v. Lamone*, 138 S. Ct. 1942, 1943 (2018) (quoting *Winter v. Natural Res. Defen. Council, Inc.*, 555 U.S. 7, 24, 129 S. Ct. 365, 376 (2008)). The Court may issue a preliminary injunction if the moving party "clearly establishe[s] the 'burden of persuasion' *as to each* of the four prerequisites":

> (1) the movant has a substantial likelihood of success on the merits;
>
> (2) the movant will suffer irreparable injury unless the injunction issues;
>
> (3) the threatened injury to the movant outweighs the injury of the proposed injunction to the opposing party; and
>
> (4) if issued, the injunction would not be adverse to the public interest.

*Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citations and internal quotation marks omitted) (emphasis added).

---

[1] Plaintiff's schedules, which were signed under penalty of perjury, listed Defendant's debt on Schedule E/F and did not check any of the boxes to indicate the debt was contingent, unliquidated, or disputed. [Case No. 18-67328, Doc. 1 at 24].

3

Debtor cites to *Lane v. U.S.*, No. CV 617-082, 2018 U.S. Dist. LEXIS 31674 (S.D. Ga. Feb. 27, 2018), for the proposition that he does not need to completely satisfy all four factors, but that the four factors should be balanced to determine whether to issue a preliminary injunction. At issue in *Lane* was the application of 5 U.S.C. § 705, which provides:

> When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review. On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court ... may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

5 U.S.C. § 705. The parties agreed that the four elements of the preliminary injunction standard applied to a stay under § 705, but they disagreed about whether the factors should be balanced, or whether all factors must weigh in favor of an injunction. 2018 U.S. Dist. LEXIS 31674 at *4. The court held that the "balancing approach is more in line with the language of § 705." *Id.*

Here, the language of 5 U.S.C. § 705 is not at issue. Instead, the Court must apply the test as set forth by the Eleventh Circuit. *See Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) ("Because Wreal must meet all four prerequisites to obtain a preliminary injunction, failure to meet even one dooms its appeal"); *U.S. v. Stinson*, 661 F. App'x 945, 951 n.7 (11th Cir. 2016) ("we have always required each of the four preliminary-injunction elements to be 'clearly established' before imposing the 'drastic remedy' of a preliminary injunction"); *Rau v. Moats*, 772 F. App'x 814, 819 (11th Cir 2019) (preliminary injunction was properly denied because the movant "had not met her burden of persuasion with respect to at least one of the four factors"). Nevertheless, the Court is mindful that "[c]rafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case

4

as the substance of the legal issues it presents." *Trump v. International Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017).

The issue in this proceeding is whether Plaintiff's student loans are dischargeable pursuant to 11 U.S.C. § 523(a)(8). That section of the Bankruptcy Code contains a "clear and self-executing requirement for an undue hardship determination ...." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275, 130 S. Ct. 1367, 1380 (2010). The Eleventh Circuit has adopted the *Brunner* test for undue hardship, which requires Plaintiff to prove the following by a preponderance of the evidence:

> (1) That the debtor cannot maintain, based on current income and living expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;
>
> (2) That additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
>
> (3) That the debtor has made good faith efforts to repay the loans.

*Hemar Ins. Corp. of Am. v. Cox (In re Cox)*, 338 F.3d 1238, 1241 (11th Cir. 2003); *Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987); *Educational Credit Mgmt. Corp. v. Mosley (In re Mosley)*, 494 F.3d 1320, 1324-25 (11th Cir. 2007).[2]

Defendant has argued that notwithstanding the waiver of Defendant's sovereign immunity in 11 U.S.C. § 106(a), this Court cannot issue the injunction requested by Plaintiff because § 106(a) provides that the enforcement of any order against a governmental unit "shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit ...." 11 U.S.C. § 106(a)(4). Defendant contends 20 U.S.C. § 1082(a)(2) is such applicable law, and it provides that "no ... injunction ... shall be issued against the Secretary [of Education] or property

---

[2] Debtor has argued the *Brunner* test is contrary to congressional intent for the definition of "undue hardship." However, *Brunner* is the test adopted by the Eleventh Circuit, and such precedent is binding on this Court.

5

under the Secretary's control ...." Defendant cited no case law for the proposition that that anti-injunction provision applies within a § 523(a) proceeding, for which sovereign immunity is expressly waived.[3] Nevertheless, to the extent Plaintiff is seeking an injunction for actions outside the scope of this proceeding, the anti-injunction provisions may apply. However, the Court need not decide the question because, even if the Court has jurisdiction to enjoin Defendant, Plaintiff has failed to show he is entitled to a preliminary injunction.

## II. Plaintiff Has Not Shown Irreparable Injury

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 1834 (1981). Therefore, the court "should not issue a preliminary injunction unless it concludes that the movant will suffer immediate harm if relief is delayed until the case is finally resolved on the merits." *De La Fuente v. Kemp*, 679 F. App'x 932, 934 (11th Cir. 2017). *See also* Federal Practice and Procedure (Wright & Miller) § 2948.1 (3d ed.) ("Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered."). "[T]he absence of a substantial likelihood of irreparable injury would, *standing alone*, make preliminary injunctive relief improper." *Siegel*, 234 F.3d at 1176 (emphasis added).

---

[3] The cases cited by Defendant are not on point, as they involve nonbankruptcy causes of action for declaratory relief that were deemed to have injunctive effect. *Carr v. Devos*, 369 F. Supp.3d 554, 556, 561 (S.D.N.Y. 2019) (suit for declaratory judgment that plaintiffs were "entitled to a borrower defense for their outstanding student loans" was impermissible because it functioned as injunctive relief); *Mashiri v. Department of Educ.*, 724 F.3d 1028, 1031 (9th Cir. 2013) (a petition for mandamus to compel the Department of Education to issue a Stafford Loan was the type of declaratory judgment barred by the anti-injunction provision); *American Assoc. of Cosmetology Schools v. Riley*, 170 F.3d 1250, 1251, 1254 (9th Cir. 1999) (in a case seeking "to invalidate the appeals process applied by the Secretary of Education to school subject to termination for certain federally guaranteed educational loan programs," the plaintiff could not avoid the anti-injunction provision by requesting relief that "is plainly coercive" but giving it a different label).

6

"In general, irreparable injury is an injury for which the court could not compensate the movant should the movant prevail in the decree." 13 Moore's Federal Practice – Civil § 65.22[1][b]; *Moon v. Medical Tech. Assoc., Inc.*, 577 F. App'x 934, 937 (11th Cir. 2014) (an irreparable injury is one "for which adequate compensatory or other corrective relief will not be available"). Thus, when the injury can be compensated by damages, it is not a basis for a preliminary injunction absent other extraordinary circumstances. Wright & Miller § 2948.1. Furthermore, the asserted injury "must be neither remote nor speculative, but actual and imminent." *Seigel*, 234 F.3d 1176. (citations and internal quotation marks omitted).

Plaintiff argues that without an injunction, he faces an uncooperative Defendant that refuses to engage in discovery regarding matters within the scope of the *Brunner* test. Plaintiff further argues his due process rights are jeopardized by the manner in which Defendant has construed the scope of this proceeding, as Defendant is leveraging the IBRP as a defense to deny Plaintiff access to discovery materials, and this may leave Defendant free to "ambush" Plaintiff with materials Defendant withheld. Plaintiff further argues that the rules governing discovery disputes will not deter Defendant's conduct because Defendant "considers money to be of no object in pursuing this case" while Plaintiff has limited resources.

Plaintiff has not shown a substantial likelihood of irreparable injury. With respect his first three injunction requests—(1) refrain from recognition of, enforcement of, or participation in the IBRP with Plaintiff; (2) refrain from accrual of interest on Plaintiff's student loan debt; and (3) refrain from requirement of repayment or collection of Plaintiff's student loan debt (the "Debt Requests")—if Plaintiff is successful in this proceeding, the student loan debt will be discharged. As a result, Plaintiff will be unaffected by the IBRP, any accrued interest will

7

be discharged, and the discharge injunction will prohibit Defendant from requiring payment on the debt.[4] Thus, Debtor will not be irreparably harmed if the Debt Requests are denied.

With respect to injunction requests related to discovery—(4) refrain from issuing objections or refusals in the course of discovery on the basis of the IRBP; (5) refrain from otherwise limiting the scope of this inquiry on the basis of the IBRP; (7) refrain from destruction or concealment of any records within the scope of those sought by Plaintiff; (8) comply in a timely fashion with Plaintiff's discovery requests; and (9) give answer to all points requested in Plaintiff's discovery requests without excessive objection (the "Discovery Requests")—Debtor will not be irreparably harmed because each of these issues can be addressed through the rules governing discovery in the normal course of this proceeding. *See* Fed. R. Bankr. P. 7026-7037.

With respect to injunction requests otherwise related to the IBRP—(6) refrain from making arguments or motions on the basis of the IBRP; and (10) assess and calculate Plaintiff's monthly student loan payment for purposes of this proceeding as though Plaintiff were enrolled in the Standard, Graduated, or Extended Repayment Plans, and not the IBRP (the "IBRP Requests")—these issues go to application of the *Brunner* test and should be argued at trial if and when they arise. Because Debtor can argue these points during trial, he will not be irreparably harmed by their denial at this time.

With respect to injunction requests based on Defendant's standing—(11) demonstrate Defendant's stake or injury arising from the discharge sought in this proceeding as it relates to Article III standing for purposes of establishing Defendant is a valid party in interest by way of projecting on some reasonable basis that Plaintiff's future income is sufficient to repay a time adjusted portion of the loan debt such that any loss incurred by Defendant is less than the

---

[4] The automatic stay prevented enforcement of the debt from the petition date until entry of the discharge and closing of the case on January 21, 2019. 11 U.S.C. §§ 362(a), (c); 554(c). Enforcement of discharged debts was thereafter barred by the discharge injunction. *Id.* § 524(a).

loss it would incur upon immediate discharge; and (12) demonstrate Defendant's stake as it relates to Article III standing for purposes of establishing that it is a valid party in interest by way of establishing that Plaintiff's Income-Based Repayment Plan can reasonably be presupposed not to be valid or in place for a significant portion of the repayment period (the "Standing Requests")—Plaintiff has not shown how he will be harmed. Plaintiff decided who to name as the defendant in this proceeding, and he chose the same entity he named as the creditor in his schedules. *Supra* n.1. Given that Plaintiff haled Defendant into this Court, he cannot now claim doing so irreparably harmed him.

Finally, with respect to Plaintiff's final request—(13) consent to substitution of Defendant (the "Substitution Request")—Plaintiff suggests that he be substituted as the defendant in this proceeding. Plaintiff has also argued the proceeding should move forward as an in rem proceeding against the debt, even though he is only seeking to discharge personal liability. However, it is unclear how this Court could grant Plaintiff any relief if the holder of the debt is not a party to this proceeding. *See infra* p. 12-14.

## III. The Remaining Requirements for a Preliminary Injunction Do Not Weigh in Plaintiff's Favor

The lack of irreparable harm to Plaintiff is, by itself, sufficient to deny his requests for preliminary injunction. However, the other factors do not weigh in Plaintiff's favor either.

### A. Likelihood of Success on the Merits

The likelihood of Plaintiff's success on the merits "is generally the most important" prerequisite to granting a temporary injunction. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1232 (11th Cir. 2005). To establish this prerequisite, Plaintiff must show "*likely*

9

or probable, rather than *certain* success." *Id.* (emphasis in original). The Court's assessment of the other factors affects the "necessary level or degree of possibility of success on the merits" that Plaintiff must demonstrate *Id.* When the other factors "weigh[] heavily in favor of granting the [injunction], the movant need only show a substantial case on the merits." *Id.* (citations and internal quotation marks omitted).

Plaintiff attached to his Motion and his reply brief a number of documents in support of his claim. These documents include: (1) prepared remarks of the Secretary of Education; (2) a document that appears to be from the U.S. Department of Education Inspector General regarding procedures for servicing student loans; (3) letter of resignation from the assistant director and student loan ombudsman of the Consumer Financial Protection Bureau; (4) summarized results of a study by the GAO on public service loan forgiveness; (5) a copy of Defendant's answer in this proceeding; (6) a document titled "Request for Information on Evaluating Undue Hardship Claims in Adversary Actions Seeking Student Loan Discharge in Bankruptcy Proceedings"; (7) Defendant's responses to Plaintiff's first requests for admissions; (8) a document titled "Table 1. Direct Loans: Subsidy Rates, Obligations, and Average Loan Size"; (9) a Social Security statement showing Plaintiff's earning history from 1994 to 2018; (10) Plaintiff's federal tax return for 2014; (11) Plaintiff's federal tax return for 2015; (12) Plaintiff's federal tax return for 2016; (13) Plaintiff's federal tax return for 2017; (14) Plaintiff's federal tax return for 2018; (15) a letter from the Georgia Department of Human Services finding Plaintiff eligible for food stamps from September 2018 to February 2019; (16) a letter from the Georgia Department of Human Services finding Plaintiff eligible for food stamps from March 2019 to August 2019; (17) a copy of the Master Promissory Note for Plaintiff's student loans; (18) a copy of Plaintiff's application for the IBRP; (19) a copy of the approval of Plaintiff's

IBRP application; and (20) and affidavit by Plaintiff's father, as an expert witness, analyzing whether Defendant would be better off by an immediate discharge rather than continuing to recognize the loan.

Plaintiff's Debt Requests and his IBRP Requests both go to the merits of Plaintiff's claim to some extent. Plaintiff has put forth some evidence of his current and historical income which goes to his ability to pay the debt while maintaining a minimal standard of living. He has also described (without corroborating evidence) medical conditions that would make his inability to pay likely to persist. His application for participation in the IBRP is some evidence relevant to whether he has made good faith efforts to repay the loan. This evidence shows it is possible for Plaintiff to succeed on the merits, but it is not sufficient for the Court to determine a probability of success given the fact-intensive nature of the *Brunner* test.

With respect to the Discovery Requests, Plaintiff has not made any showing of his likelihood of success on the merits. Plaintiff argues that Defendant has unlimited resources to use against his limited resources in a discovery dispute. Plaintiff does not explain how this fact affects the application of the discovery rules or the Court's determination of any discovery dispute. Plaintiff also argues that Defendant's assertion of sovereign immunity means that Defendant's compliance with the discovery rules is voluntary. However, Defendant has not asserted sovereign immunity in response to a request made pursuant to the discovery rules (such as a motion to compel). Instead, Defendant has asserted sovereign immunity to a request that seeks to circumvent the use of those rules. Therefore, Plaintiff's argument regarding Defendant's voluntary compliance with the rules of discovery is without merit.

To the extent Plaintiff's IBRP Requests and Discovery Requests are directed at excluding or limiting consideration of the IBRP from the *Brunner* determination, the law does

11

not favor Plaintiff. In the Eleventh Circuit, a debtor's failure to participate in an IBRP is not per se bad faith, but the availability of and the debtor's enrollment in an IBRP is relevant to the good-faith prong of the *Brunner* analysis. *Mosley*, 494 F.3d at 1327.[5] Therefore, Debtor is unlikely to be successful in any effort to exclude evidence relating to his IBRP.

With respect to the Standing Requests, Plaintiff has argued that Defendant does not have standing to defend this proceeding because a discharge is not adverse to Defendant's interests as a discharge now would result in a smaller loss than a discharge at the end of the repayment period. Any opposition Defendant mounts "is actually about litigating a 'generalized grievance' against debtors other than Plaintiff, out of the fear of more common discharges, rather than the particulars of this case." [Doc. 20 at 4]. Plaintiff furthers argues that Defendant lacks prudential standing because tuition rates increased due to the nature of government subsidies and student loan programs, which provide easy money to universities, and Defendant does not have standing for that portion of the debt that Defendant caused Debtor to incur.

In *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130 (1992), the Supreme Court set forth three elements of constitutional standing: (1) an injury in fact; (2) "a causal connection between the injury and the conduct complained of"; and (3) the injury will likely be redressed by a favorable decision. *Id.* at 560-61, 112 S. Ct. at 2136. "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561; 112 S. Ct. at 2136. Here, the party invoking federal jurisdiction is Plaintiff, not Defendant. Nevertheless, Plaintiff argues that Defendant must show that it has standing to defend. The cases cited by Plaintiff do not support his position as none of them involve a determination (or even

---

[5] Indeed, in *Mosley* the Eleventh Circuit recognized one of Debtor's arguments: that an IBRP "may require [debtors] effectively to 'trad[e] one nondischargeable debt for another' because any debt that is discharged under the program is treated as taxable income." 494 F.3d at 1327 (quoting *Barrett v. Educational Credit Mgmt. Corp. (In re Barrett)*, 487 F.3d 353, 364 (11th Cir. 2007)). While the taxation factor might affect the weight a bankruptcy court gives to an IBRP in the good-faith analysis, Eleventh Circuit precedent does not exclude consideration of such plans.

12

the question) of whether a named defendant has a right to defend against the claims brought against him. *U.S. v. Warren*, 632 F. App'x 973, 974 n.1 (11th Cir. 2015) (criminal defendant lacked standing to appeal district court's interpretation of a sentencing guideline that was not applied to the defendant); *Belcher v. A & M Bus. Props., Inc.*, No 8:10-cv-2898-23AEP, 2015 WL 4527575, at *2 (M.D. Fla. July 27, 2015) (the defendant did not have standing to quash the plaintiff's subpoena of a third party when the defendant's objection to the subpoena was not based on a personal right or privilege); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 117 S. Ct. 1055, 1067 (1997) (discussing a party's "[s]tanding to defend on appeal *in place of* the original defendant") (emphasis added); *Hollingsworth v. Perry*, 570 U.S. 693, 704, 133 S. Ct. 2652, 2661 (2013) (considering the standing of individuals who intervened as defendants in a challenge to the constitutionality of a law when the original defendants declined to defend the law); *Tarantola v. Deutche Bank Nat. Trust Co. (In re Tarantola)*, 491 B.R. 111, 117 (Bankr. D. Ariz. 2013) (in an adversary proceeding by the debtor objecting to the mortgage proof of claim, the court considered whether the creditor had a right to enforce the note and whether the servicer had standing to file the proof of claim; there was no question about whether the creditor had standing to defend itself in the proceeding)[6]; *Ullom v. Robbins (In re Robbins)*, 398 B.R. 442, 446-47 (Bankr. W.D. Ky. 2008) (at issue was whether the defendant had standing to assert counterclaims); *U.S. v. Minners*, No. 08-CR-44; Civ. No. 10-CV-417, 2013 WL 2239571, at *4 (N.D. Okla. May 21, 2013) (criminal defendant could not have his conviction set aside based on his attorney's failure to file a suppression motion because the attorney concluded the defendant

---

[6] The court stated that "A creditor seeking to exercise some interest in a debtor's estate must demonstrate both constitutional and prudential standing. ... To establish constitutional standing, a creditor must clear the relatively low hurdle of demonstrating injury in fact, causation, and redressability. ... A note holder seeking to enforce its rights satisfies these elements because bankruptcy's automatic stay prohibits pursuit of available remedies (injury), enjoins pursuit of relief outside of bankruptcy (causation), and offers potential relief—such as lifting the stay–which would remedy the injury (redressability)." *Tarantola*, 491 B.R. at 118 (citing *Veal v. American Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 906 (B.A.P. 9th Cir. 2011)). The same analysis can be applied to Defendant.

did not have standing to file a motion challenging police entry into a vacant apartment in which the defendant was staying illegally); *U.S. v. Torres*, 949 F.2d 606, 608 (2d Cir. 1991) (criminal defendant who sought to suppress the contents of a shoulder bag did not have standing to assert a privacy interest when she had disclaimed or abandoned the bag); *U.S. v. Kennedy*, 638 F.3d 159, 163 (3d Cir. 2011), *abrogated by Byrd v. U.S.*, 138 S. Ct. 1518 (2018) (criminal defendant's standing to challenge a search); *U.S. v. Salvucci*, 448 U.S. 83, 92, 100 S. Ct. 2547, 2553 (1980) (criminal defendant does not have standing to exclude evidence unless he establishes a legitimate expectation of privacy in the areas where the evidence was seized).

Even assuming the constitutional standing requirement applies to Defendant, Plaintiff has conceded he owes a debt to Defendant. *Supra* n.1; Doc. 1 ¶ 3, 6. Through this proceeding, Plaintiff seeks to discharge that debt. Unless Defendant is allowed to defend itself, the debt will be discharged. Given these facts, Plaintiff has not shown he is likely to succeed in challenging Defendant's standing.

Plaintiff also argues Defendant lacks standing under the "zone of interests" test. The Supreme Court has said the "zone of interests" test has been improperly labeled as a matter of prudential standing. Instead, it is "an issue that requires us to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark Intern., Inc. v. Static Control Components, Inc*., 572 U.S. 118, 127, 134 S. Ct. 1377, 1387 (2014). The zone-of-interests test "asks whether 'this particular class of persons ha[s] a right to sue under this substantive statute.'" *Id.* (quoting *Association of Battery Recyclers, Inc. v. EPA*, 716 F.3d 667, 675-676 (D.C. Cir. 2013) (concurring opinion)). Debtor argues that the zone of interests protected by § 523(a)(8) is to rescue the student loan

14

program from fiscal doom and to prevent abuse of the bankruptcy process by undeserving debtors. The statute itself contains no such language.

Plaintiff has not shown why the zone of interests test applies to defendants generally. But assuming it does, Defendant here is facing discharge of its debt through application of § 523(a)(8). Debtor's cause of action encompasses and directly affects Defendant's ability to enforce its debt. Therefore, the Court cannot conclude Plaintiff is likely to succeed in showing that Defendant is outside the zone of interests of § 523(a)(8).

In his Motion, Plaintiff asserted that the Master Promissory Note or IBRP may be invalid or otherwise unenforceable and requested direction from the Court. The only issue in this proceeding is whether the debt owed to Defendant is dischargeable. As noted above, Plaintiff did not dispute the validity of the debt in his schedules or the complaint. If Plaintiff wants to challenge the validity or enforceability of the debt on other grounds, he may do so in the appropriate nonbankruptcy forum. If the debt is unenforceable for reasons unrelated to the bankruptcy discharge, the outcome of this proceeding will not affect that separate determination.

### B. Balance of Harms

With respect to balance of the harms, Plaintiff argues Defendant will not be harmed by an injunction because it is currently receiving $0 per month from Debtor. Even if Defendant prevails in this proceeding, Plaintiff is unlikely to have sufficient future income to ever pay Defendant. Assuming this is true, as set forth in Part II, Plaintiff also will suffer no harm if the injunctions do not issue. Thus, the balance of harms does not weigh in favor of Plaintiff.

### C. Public Interest

With respect to the public interest, Plaintiff contends an injunction would further the public interest because it would preserve the constitutionality of this proceeding. Plaintiff has asserted a number of constitutional challenges to § 523(a)(8) and the IBRP as follows:

(1) Section 523(a)(8)'s prohibition on discharge violates Plaintiff's due process rights because it interferes with his ability to exercise reproductive rights, marriage rights, or other standards of liberty and self-determination on the basis that it subjects prospective future spouses of Plaintiff to the tax liability arising from the student loan debt upon discharge.

(2) Debtors who obtain an education through the use of credit cards are not subject to the same discharge limitations as those who use student loans. Plaintiff contends that his circumstances raise a disparate impact claim because his psychological disabilities are hereditary, and therefore the absence or presence of family resources relative to unsecured lines of credit other than student loans is demonstrable as a disparate impact discrimination case for individuals with hereditary disabilities whose inherited financial resources force them to rely on nondischargeable student loans rather than credit cards.

(3) Section 523(a)(8) violates Plaintiff's 14th Amendment rights by damaging his relationship with other creditors by not similarly granting those creditors a discharge exemption.

(4) Section 523(a)(8) violates Plaintiff's 1st Amendment right to free speech. Plaintiff is a writer/publisher and actor. Because the IBRP is the only realistic option for repaying his student loans, he would face significant hardship due to the manner in which the IBRP calculates payments in the year following a sale of his work. Therefore, he is penalized for artistic expression.

(5) Plaintiff's religious freedom rights are affected because he believes the loans are usurious.

Plaintiff did not raise any constitutional issues in his complaint and cannot properly raise them through argument in a brief. *Mason v. Churchman*, 723 F. App'x 868, 871 (11th Cir. 2018) (citing *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004)). Plaintiff argues that these constitutional challenges are not new claims, but rather responses to defenses raised by Defendant. Regardless of how Plaintiff characterizes these challenges, there is no constitutional right to a discharge of debts.[7] *U.S. v. Kras*, 409 U.S. 434, 446, 93 S. Ct. 631, 638 (1973); *see also Grogan v. Garner*, 498 U.S. 279, 286-87, 111 S. Ct. 654, 659 (1991) ([I]n the same breath that we have invoked [the Bankruptcy Code's] 'fresh start' policy, we have been careful to explain that the Act limits the opportunity for a completely unencumbered new beginning to the 'honest but unfortunate debtor.'"). Therefore, whether or not the injunctions issue, there is no impact on the public interest. Furthermore, to the extent Plaintiff argues that any aspect of the student loan program is unconstitutional, those issues can be raised in the appropriate nonbankruptcy forum.[8]

---

[7] The Eleventh Circuit has stated that a violation of constitutional rights generally does raise a presumption of irreparable harm necessary to justify a preliminary injunction. *Siegel,* 234 F.3d at 1177-78. The exceptions include on-going violations that "involve the right of privacy and certain First Amendment claims establishing an imminent likelihood that pure speech will be chilled or prevented altogether." *Id.* at 1178.

[8] Defendant contends it is entitled to have an Article III judge determine any non-core constitutional issues. *See Stern v. Marshall*, 564 U.S. 462, 487, 131 S. Ct. 2594, 2611 (2011). And, as noted in the discussion on Plaintiff's likelihood of success on the merits, there is no need for a preliminary injunction for matters that can be raised and determined via the procedures set forth in the Bankruptcy Rules.

**IV. Conclusion**

Having considered each of Plaintiff's requests for a preliminary injunction, the Court finds that Plaintiff has not established any of the prerequisites for granting a preliminary injunction. Accordingly, it is

ORDERED that Plaintiff's Motion is DENIED.

**END OF ORDER**

## **Distribution List**

Patrick M. Gerard
Apt. 203
2400 Barrett Creek Blvd
Marietta, GA 30066

Andres H. Sandoval
United States Attorney's Office
Suite 600
75 Ted Turner Drive SW
Atlanta, GA 30303